Mario CANO; Paula Rangel; Maria Calleros; Norma E. Ramirez; Margo Munoz; Bennie G. Corona; Myron Garcia; Frank Diaz; Consuelo E. Rodriguez; Jose Ruelas; Racquel Torres; Enrique F. Aranda; Josephine Santiago; Antonio M. Lopez; Jose R. Pacheco; Luis Natividad; Marisol Natividad; Luis Garcia; Luz Palomino; Silvia Palomino; Ignacio Leon; Joaquin Galan; Ernesto Bustillos; Cathy Espitia; Salvadoran American Leadership and Educational Fund, Plaintiff(s),

v.

Gray DAVIS, in his official capacity as Governor of the State of California; Cruz Bustamante, in his official capacity as Lieutenant Governor of the State of California; Bill Jones, in his official capacity as Secretary of State of the State of California; John Burton, in his official capacity as President Pro Tempore of the California State Senate; Robert Hertzberg, in his official capacity as Speaker of the California State Assembly, Defendant(s).

No. CV 01–08477 MMM(RCX).

United States District Court,
C.D. California.

Jan. 22, 2002.

BEFORE: REINHARDT, Circuit Judge, MORROW and SNYDER, District Judges.[1]

## ORDER DENYING MOTION OF DEFENDANT JOHN BURTON AND INTERVENOR CALIFORNIA STATE SENATE REQUESTING ABSTENTION IN FAVOR OF PENDING STATE COURT ACTIONS

PER CURIAM.

### BACKGROUND

In September, 2001, the State of California adopted new state and federal legislative district lines based on the data obtained from the 2000 census. Soon thereafter, plaintiffs filed this action challenging the legality of four of those districts: two Los Angeles County congressional districts in the San Fernando Valley, one congressional district in San Diego County, and a State Senate district in south-eastern Los Angeles County. Plaintiffs claim that all four of these southern California districts violate § 2 of the Voting Rights Act, in that they deny Latinos the opportunity to elect representatives of choice. Plaintiffs also contend that the three challenged congressional districts violate the Equal Protection Clause, both because the districts were drawn with the intent to dilute the effect of Latino votes, and because the three congressional districts are racial gerrymanders that violate *Shaw v. Reno*, 509 U.S. 630, 113 S.Ct. 2816, 125 L.Ed.2d 511 (1993). Defendants deny all of plaintiffs' claims.

Two actions challenging entirely different aspects of the redistricting plan were filed in state court in northern California by other plaintiffs. In the first, *Andal v. Davis*, Sacramento Superior Court No. 01–CS–01397, the plaintiffs allege that the state and federal legislative districts in San Joaquin County violate the California constitution as well as reapportionment standards set forth by the California Supreme Court. The *Andal* plaintiffs primarily contend that the manner in which the districts in San Joaquin County and the City of Stockton were drawn deny voters in that county and city effective representation because the districts divide local communities of interest, insufficiently respect county and city boundary lines by dividing those areas into several districts, and violate California law by splitting census tracts. In the second state court action, *Kennedy v. Davis*, Santa Clara Superior Court No. CV–803679, another set of plaintiffs raises similar state law claims regarding the manner in which districts in Santa Clara County were drawn. One of the recently enacted redistricting laws, SB 802, provides that any challenge to Assembly district lines must first be presented to the California Supreme Court, by a petition for a writ of mandate. In both *Andal* and *Kennedy*, plaintiffs filed such petitions, but both petitions were denied. The plaintiffs subsequently filed actions in the

---

1. A three-judge district court consisting of one circuit judge and two district judges was convened in this case pursuant to 28 U.S.C. § 2284(a).

Superior Courts located in their respective counties

In light of the two pending state cases, defendant John Burton and defendant-intervenor California State Senate have asked this court to stay the proceedings in this action pursuant to the doctrine of deferral established by the Supreme Court in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).[2] For the reasons set forth below, we deny the motion.

## DISCUSSION

 The *Pullman* doctrine is "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). In *Pullman,* the Supreme Court held "that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).[3] In the reapportionment context, federal courts are required "to defer consideration of disputes involving redistricting where the State, through its legislative *or* judicial branch, has begun to address that highly political task itself." *Growe,* 507 U.S. at 33, 113 S.Ct. 1075; *see also Scott v. Germano,* 381 U.S. 407, 409, 85 S.Ct. 1525, 14 L.Ed.2d 477 (1965).

 We use three criteria in determining whether to defer under *Pullman.* First, the complaint must "touch on a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *Canton v. Spokane Sch. Dist. No. 81,* 498 F.2d 840, 845 (9th Cir.1974) (quoting *Pullman,* 312 U.S. at 498, 61 S.Ct. 643). Second, "it must be plain that the constitutional adjudication [in the federal case] can be avoided if a definite ruling on the state issue would terminate the controversy." *Columbia Basin Apartment Ass'n v. City of Pasco,* 268 F.3d 791, 801 (9th Cir.2001). Finally, the possibly determinative issue of state law must be "uncertain." *Id.*

 Additionally, the Ninth Circuit has held that district courts must closely scrutinize a motion to defer adjudication of voting rights cases because of the importance of safeguarding the right to vote. *Badham v. United States Dist. Ct. for the Northern Dist. of Calif.,* 721 F.2d 1170, 1173 (9th Cir.1983) ("The dangers posed by an abstention order are particularly evident in voting cases.... In a redistricting case such as this, for example, the courts' failure to act before the next election forces voters to vote in an election which may be constitutionally defective."). Thus, "a district court must independently consider the effect that delay resulting from the abstention order will have on the plaintiff's right to vote." *Id.; see also Duncan v. Poythress,* 657 F.2d 691, 697 (5th Cir.1981).

Here, there is no real dispute about two of the three *Pullman* criteria. The first requirement of the *Pullman* test is clearly met. Redistricting is undoubtedly a sensitive area of state policy. *Miller v. Johnson,* 515 U.S. 900, 915, 115 S.Ct. 2475, 132

---

2. For simplicity, in this order we will refer to the moving parties collectively as "defendant" or "the defendant."

3. Although the *Pullman* doctrine is frequently referred to as a form of "abstention," the

Supreme Court recently clarified that because a federal court entering a stay under *Pullman* may retain jurisdiction over the case, it is more accurately termed a doctrine of "deferral." *Growe v. Emison,* 507 U.S. 25, 32, 113 S.Ct. 1075, 122 L.Ed.2d 388 (1993).

L.Ed.2d 762 (1995) ("It is well settled that reapportionment is primarily the duty and responsibility of the State." (citation omitted)). The third prong of the test is satisfied as well. Plaintiffs in both state cases assert (among other claims) that the districts they challenge violate Art. XXI, § 2 of the California Constitution. That provision sets forth certain state redistricting standards, and has not yet been interpreted by the California Supreme Court.

However, it is not at all "plain" that a ruling on the state law issue would terminate the controversy here. *Columbia Basin Apartment Ass'n*, 268 F.3d at 801. *Growe* instructs that the court's inquiry in this regard should focus not on the similarity of the claims between the federal and state actions, but on the nature of the relief requested in each. 507 U.S. at 35, 113 S.Ct. 1075. The relief sought in both *Andal* and *Kennedy* is similar; it is local in nature and limited to the particular county in which the plaintiffs reside. The *Andal* plaintiffs seek a writ of mandate commanding the state to adjust the legislative and congressional district boundary lines in San Joaquin County and to not conduct an election there using the current lines. They also seek an order directing the state to renumber certain senatorial districts. The *Kennedy* plaintiffs seek a declaration that the redistricting plan embodied in SB 802/AB 632 is unconstitutional insofar as it partitions the South County area of Santa Clara County into different legislative districts. Those plaintiffs also seek an order directing the state to adjust the boundary lines of congressional district 11, Assembly district 27, and Senate district 51 so that in each case the South County area of Santa Clara County will fall entirely within a single district. Final-

ly, the plaintiffs in *Kennedy* request an injunction preventing the state from utilizing the newly-drawn lines for any election in Santa Clara County.

The instant suit, by contrast, seeks relief limited to a different part of the state. Plaintiffs seek adjustments to the boundary lines of districts located only in Los Angeles and San Diego Counties.[4] The nature of the relief requested here is therefore entirely different from that sought in the two state court suits: here, the relief pertains to counties geographically distant from the counties involved in the state court proceedings.

Defendant argues, however, that a ruling in favor of plaintiffs in either the *Andal* or *Kennedy* actions would have an impact on the matters at issue in this case because a favorable ruling for plaintiffs in either *Andal* or *Kennedy* would be based on principles that would apply statewide and would thus require the redrawing of districts across the state, including those challenged by plaintiffs in this action. Further, defendant asserts that even if the legislature set out to redraw only the districts in San Joaquin and/or Santa Clara Counties that are challenged in the state court cases, there would be a ripple effect on the districts that plaintiffs challenge in this suit. Additionally, defendant notes that once the issue of redistricting is revisited by the legislature, the result is totally unpredictable, and a new map could emerge that differs in significant respects from the current one. Finally, defendant maintains that this case cannot affect the November 2002 election, and that the next election on which it could have any impact is to be conducted in March 2004. Consequently, defendant asserts that there is

---

4. Plaintiffs' complaint on its face seeks statewide relief. However, during a hearing on plaintiffs' application for a temporary restraining order, plaintiffs acknowledged that the only relief they seek is changes to the four specified districts in Los Angeles and San Diego Counties.

ample time to defer to the state court process yet reach the merits of this case, if necessary, before the next scheduled election.

Plaintiffs retort that the *Andal* and *Kennedy* cases raise "localized" issues and that favorable rulings for the plaintiffs will have no effect on the current litigation. They argue that the cases are therefore not sufficiently related. In this regard, plaintiffs note that any effect on this case of rulings in either *Andal* or *Kennedy* would flow from voluntary actions undertaken by the legislature. They point out, *inter alia*, that even if the Superior Court of San Joaquin or Santa Clara County decided that the redistricting plan violates the California constitution, the Secretary of State is nevertheless required to enforce the plan, at least in all other counties, unless an appellate court subsequently determines that the plan violates the California constitution. *See* Calif. Const. Art. III, § 3.5. Thus, if the legislature were to decide not to appeal an adverse Superior Court ruling, and instead simply to make the changes required by that ruling, the boundary lines of the districts here could not be affected by the ruling. It is the legal effect of the state court ruling itself, plaintiffs assert, not the possibility of voluntary action in response to that ruling, that is the focus of the *Pullman* doctrine. Even if we could look to potential voluntary action, plaintiffs disagree that there would likely be a ripple effect on the districts at issue here should the legislature redraw the lines in San Joaquin and/or Santa Clara Counties. In any event, they argue, any such potential effect is far too speculative to support a delay of the adjudication of their claims. Finally, as a practical matter, plaintiffs dispute defendant's contention that a remedy granted in this case could have no effect on the November 2002 election.

The cases that have considered deferral in the redistricting context have involved federal and state suits addressing the same geographic areas, or malapportionment claims affecting every district in the state, or both. In *Growe*, for instance, the Supreme Court required a federal court to defer to statewide redistricting proceedings being conducted by a state court, a judicially supervised process that was initiated because of a legislative impasse. 507 U.S. at 27–29, 113 S.Ct. 1075. In *Badham*, the state and federal plaintiffs both complained that technical changes made by the Secretary of State that particularly affected certain districts were unauthorized by state law. 721 F.2d at 1175.

The situation here is different. The nature of the relief sought in the two state court suits is limited to the two northern California counties where those actions arose. Such relief is entirely different from what is sought here—modifications to districts in two southern California counties. Given the nature of the relief sought in the *Andal* and *Kennedy* cases, an adjudication of plaintiffs' claims would in no way infringe on "[t]he power of the judiciary of a State to require valid reapportionment." *Germano*, 85 S.Ct. at 1527. Even the question of what practical consequences, if any, the *Andal* and *Kennedy* decisions might have on the case before us is speculative. Should either of the plaintiffs in the state cases prevail, the range of available responses to such a ruling is extremely broad. Certainly we could not say that it is *plain* that the ruling would have an effect of any kind on the case before us. In any event, as we have stated, it is not the state court ruling itself that could have a significant effect on this litigation. Only if the legislature elected to take certain actions in response to such a ruling could this case be materially affected, and it is simply impossible for this court to determine at this time how the

California legislature would react to an adverse ruling in the state court actions. For example, as we have already noted, if the *Andal* and *Kennedy* plaintiffs prevailed in the Superior Courts of Santa Clara and San Joaquin Counties, the legislature could simply adjust the district lines in those counties and make no modification to district lines elsewhere, particularly in non-contiguous counties as distant as Los Angeles and San Diego. Accordingly, the second prong of *Pullman* is not met.

 We recognize that *Growe* makes clear that federal courts are to defer to both state legislative and judicial redistricting proceedings. 507 U.S. at 33, 113 S.Ct. 1075. At this time, however, the possibility of a renewed legislative redistricting effort in response to the *Andal* and *Kennedy* litigation is too remote to justify deferring the adjudication of plaintiffs' federal claims. *See Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236, 104 S.Ct. 2321, 81 L.Ed.2d 186 ("[T]he relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary."). This is particularly so in light of the independent concern that a delay would severely hamper plaintiffs' ability to pursue their important statutory and constitutional voting rights in federal court. The next statewide election is scheduled for November 5, 2002. The parties dispute whether the court can rule in time to have any effect on this election. It is premature for us to make any finding, or express any view, in this regard. It is our obligation, however, to act with as much dispatch as possible at this stage of the litigation. And it is clear that abstention would foreclose any possibility that the fundamental voting rights violation that plaintiffs allege could be remedied prior to the next statewide election. Given the speculative nature of defendant's claim that the second *Pullman* factor is satisfied, such a result is not warranted. *See Badham*, 721 F.2d at 1172–73.

We therefore conclude that it is not appropriate at this time to defer to the *Andal* and *Kennedy* courts under *Pullman* abstention, or more specifically under the *Germano/Growe* doctrine of deferral. Defendant's motion is denied without prejudice to its renewal if developments in the state cases make it plain that a ruling in either of those cases will satisfy the second *Pullman* requirement.